Thank you. Madam Clerk, please call the next case. 313-0012, Gloria Calvert-DeGroot, appellant Elizabeth Urich, v. Sisson-Long & Lanscaping & Sisson Inc., Abilene Amanda Newman, and CGH Medical Center, Abilene Stephen Randolph. Ms. Urich, you may proceed. May it please the Court, Counsel. My name is Beth Urich. I'm here today representing you, a plaintiff appellant, in this matter. Mr. and Mrs. DeGroot request that the Court reverse the trial court's ruling for two reasons. First, because there's an issue of material fact as to whether or not this was an unnatural accumulation of snow on which Ms. DeGroot slipped, caused by the defendant's plowing activities as they skirted parked cars in the lot. And second, because the deliberate encounter exception to the open and obvious rule applies in this case. Your Honors, as you know, this is a case regarding a slip and fall between parked cars in an icy parking lot of CGH Medical Center. CGH is a hospital that's open for business 24 hours a day. They contracted with Sisson to obtain snow removal and salt deprecation services. There had been a substantial snowfall of about 11 to 12 inches on the 1st of December, and Sisson performed snow removal services on the 1st, 2nd, and 3rd. Mrs. DeGroot would fall on the 4th of December. There was no precipitation between when Sisson discontinued their snow removal work and when Ms. DeGroot fell. Mrs. DeGroot arrived at the parking lot around 1245 in the afternoon. Her father, I believe, had a cardiac episode and she was following an ambulance. She also returned to the parking lot in the afternoon around 3 o'clock to retrieve her cellular telephone, and then her business at the hospital was done around 7 p.m. after dark when she returned to her car. She had her mother drive her from a comparatively more clear part of the parking lot to the area right behind her vehicle, and she walked the steps between her car to the driver's door, and that's where she fell and was injured. According to Sisson's description of how they performed the snow removal services, they would plow end-to-end and remove all accumulations of snow in the lot except for those that were around, between, and under any cars that remained in the lot. So just how exactly would they get that snow out from around and underneath those cars that are in the parking lot? According to the testimony of one of their snow removal workers, he occasionally shoveled between the cars. The defendant, CGH, had workers who would remove snow on the sidewalks, and whatever manner of snow removal they performed on the sidewalks could have been performed in those areas. But the issue is, however they would plan to remove it, it was an unnatural accumulation that the defendants themselves caused. How so? What was unnatural about it? Good question, Your Honor. Because the way defendants described that they conducted the plowing, the only accumulations that would be left behind would be around, between, or under a parked car. And they testified that they would go around those cars with a plow, and that would skirt and bank snow around the car. So if there's an accumulation left, by natural consequence of their own description, it resulted where there was a parked car. And they would skirt, and they would therefore bank, and any snow that was left behind, then at least the finder of fact could make a reasonable inference, resulted from added accumulation. Similar to what the state does when you go down a state highway in front of your driveway, if you live out in the country. Right. I think in the experience of the juror, to know that skirting causes banking, but the defendant, Mr. Sisson, did admit that under deposition as well. Is there any way, that you're aware of, to plow snow without that happening? To arrange for the absence of cars. Is there any way to plow snow without pushing some snow to the side? Hypothetically, to arrange for the absence of cars. No, you're right, whenever the plow passes, it's going to create a bank of snow. What was the contract for, plowing snow or removing snow? Removing also, because they were to haul away the snow that they piled. Plowing is a methodology of removing snow, isn't it? Right. They were, I believe, by contract to not just only plow the snow, but also to remove it. So they would initially plow it to a certain location, and then haul that away using trucks. It doesn't snow inside a building, right? True. And yet, the natural accumulation rule we know applies if you walk into a hospital or grocery store, wherever it is you're going, and you got snow, and you track snow in and it melts on the floor, that the law applies natural accumulation in that room. There's nothing natural about snow being inside a building with a roof on it. That's true, but I think you would have a different situation if the hospital, for instance, had an open doorway, and the plow came right across it, banking snow inside. Well, I guess where I was going is the natural accumulation rule inside these buildings just recognizes, the law recognizes the unreasonable burden it would put on a property owner to stop that from happening. In other words, what are you going to do? Have somebody with a mop plow, everybody that walks through? Because you go through the grovers, you're going to have, as the snow melts as you're going through, you got water by the green beans and by the cereal and the vegetables, and it just gets tracked in, and it's just an unreasonable burden to place on a property owner to keep all that water off the floor that occurs when it snows outside and people walk in your business and track it in. But the distinction I was trying to make with my response is when you track snow inside, I believe the law recognizes that to be a natural accumulation. It's naturally on your feet, and you naturally track it in. I'm suggesting this was a literal unnatural accumulation in this spot caused by defendants, as if, if they tracked it inside, they had carried in a scoop of snow and dumped it on the floor inside the store. That's very different than snow that's being tracked. I think the finder of fact can draw an inference that this snow was placed there in that spot by the defendant. Yes, they would have a burden to remove snow. That's what they contracted to do. So they went over and intentionally placed it there, or some of this snow was, certainly some of the snow between those cars would have been naturally accumulated, right? Yes, and even I would concede so far as to say it may be the case that all of the snow was naturally accumulated. But the question at summary judgment is not. It's a fact issue? Right, it's a fact issue. How's a jury going to decide it? How's a jury going to decide it? Whether they like the plaintiff's lawyer better than they like—I mean, how's a jury going to decide that issue? I think what you've said is there's a fact question that's being decided in your hypothetical. If there's a fact question, summary judgment should have been denied. Well, that's not true. I'm not sure how— There's got to be a fact that a jury can decide, you know, that there's some way to decide. The issue is beyond pure speculation. You can't send it to a jury to let them speculate as to whether they like your suit better than they like the suit worn by the defense attorney or whether they feel sorry for the plaintiff or they like hospitals better than people that sue hospitals or whatever it might be. There's got to be a rational, factual basis for them to resolve that. Under your hypothetical, how are they going to do that without speculating? Without speculating whether the snow that arrived there between the cars was pushed there by a defendant. That's your question. Without—the snow that was unnaturally accumulated, the plaintiff's unnaturally accumulated, and it was that snow that she fell on as opposed to the snow that was naturally accumulated because a hospital, unlike a shopping mall, people come and go on all hours of the night, and the nursing staffs, everybody there, so they can't go in and clean a whole apartment out at night because they're not empty and you've still got cars in there. So how are you going to— Perhaps they could arrange for it to be empty, but that's not really the question. The standard under the law is if they created an unnatural accumulation or if they aggravated a natural accumulation. So you're saying there would have been some snow here and some of it may have been added. If some of it may have been added, then there's a fact question and summary judgment should have been denied. And it's not necessary for the finder of fact to decide was the flake of snow she fell on one that had naturally accumulated or one that had been pushed there. It's sufficient. If some of the snow was pushed there by a defendant, that's the aggravation of a natural accumulation, and that gets you past summary judgment. It's a fact question at that point. If there's a fact question as to was this snow pushed there when we know some was, then that's a fact question. So that's how this case is remarkably similar to the case of Sims v. Bluff. Both cases have an injury on a built-up ridge of snow beside a driver's door. Both cases you have a family member returning a day or two after the fall and seeing this built-up ridge of snow. And in both cases you have the defendant, snow plow professional, saying, our methodology is sometimes we skirt cars. Then the appellate court held that that was sufficient to create a fact question. Just that they sometimes skirted cars, that such skirting would create a ridge, and that such a ridge was observed was enough to create a fact question for the finder of fact. The defendants have made attempts to distinguish this case, but I think those attempts fall short. First they say there's no direct evidence in our case that a car was actually skirted on the first through the third, or that a car was actually skirted in this location of the lot. But that's the same as Sims. There was no direct evidence that the particular spot was skirted, just that some skirting sometimes occurred with this plowing. Next, defendant Sisson points out that there was an admission by the defendants in Sims that there was some drainage in the lot. But I think that's a red herring because the appellate court didn't rely on any issue of drainage in deciding Sims. They said if there was a built-up ridge and skirting would have caused a ridge, then you have a fact question. Well, if there's cars there, you either hit them with the snow plow or you skirt them. Those are the only two options available to that snow plow driver. So what you're saying would be the choice a reasonable snow plow driver would make. Hit the car, push it out of the way, or skirt around it. Hypothetically, and I think this question also relates to the four-factor duty test also generally, there's a lot of ways that they could have arranged it. One would have been at the time that there's a heavy snowfall, have whatever area they can clear well demarked as a place where now we're going to go ask everyone, perhaps by an announcement over the PA, please move your car to a safe area so that we can plow the rest. Or they could mark off certain parts of the lot and you only have half your lot open or half your lot not open and you can move people from one side to the other. No, they could have a policy of towing vehicles. They could have a policy of towing. Like municipalities do. Municipalities often do. They could have that policy as well. Municipalities often also demark a certain area that when there's a heavy snowfall you can't park in that location because we're going to plow this first, then you can move your cars to that side. So in essence, the argument, medical care isn't expensive enough, let's put these burdens on the hospital. Well, let's look at the burden question. So in this case, we're past the point of when they've stopped plowing. They plowed and plowed and then they've stopped. And then morning passes when, according to CGH, they would conduct their daily inspection. And that daily inspection should have turned up an unsafe nature of the lot because it's the testimony of three witnesses that that area of the lot was very unsafe. Then the only burden on them, according to their testimony, would be to contact the Senate and tell them they want additional snow removal or additional salt. So the burden on the defendants is just to do what they claim they were already undertaking to do, that conduct a daily inspection and alert their snow removal professional if they needed more work done. There was time between when the daily inspection would have occurred and when Mr. Groot fell for such things to be done. And by the description of the citizen employees, if they had been called back, they would have applied additional salt and melted this ice right down to the blackout. Well, then what do you do with the problem? The salt causes snow to melt, right? Exactly. And then when the sun goes down off of that melted snow, you assume on a sunny day it refreezes, so now you've got more ice, which is also unnatural. I myself am not a snow plow professional, but the testimony under deposition when I deposed these snow plow professionals was that typically when they do their work and remove snow in this lot and apply salt and they decide they're done, they have washed all the liquid in this lot, melt under the powers of the salt, and drain into the drains. They're used to seeing clear to the blacktop, according to them. So whether that's possible or not, I don't know. It's what they said was possible. Why don't I turn to the deliberate encounter exception? As the Court's aware, deliberate encounter exception imposes a duty where the landowner should anticipate the plaintiff will proceed in the face of an obvious danger because of the lack of a better alternative. My suggestion is here Mr. Groot didn't actually have an alternative. It's 7 o'clock, it's time for her to return to her car, and there's ice next to her car. The only route that she has from the rear of her car to the door is to walk those steps. The only alternative for Mr. Groot that I can think of, if you're analyzing her choices at 7 p.m., are to just not return to her car, decide it's unsafe, and leave it there until the ice potentially melts. She did, but I would say that it's possible the conditions were very different from 3 o'clock to 7 o'clock. It's colder at 7 o'clock, it's darker at 7 o'clock. So I'm not sure even that this is an obvious hazard or that she knew what she was going to encounter there. So was it the dark and the temperature that caused her to fall, or was it the snow that was also there at 3 o'clock? The dark and the cold would have contributed to an icy condition and a difficulty seeing that condition. The defendants have cited, defendant CJH has cited three cases about the deliberate encounter exception, but those are inapplicable here because in those cases the plaintiff actually had a more favorable alternative, say, to take the front door or the back door, walk on one side of the street or the other. Ms. DeGroote didn't have an alternative. They analyzed her alternatives at the time that she's parking at 1245, and I think that's unreasonable that when she's on her way to visit her father and has had a cardiac episode that she would go look at all the spots and pick one that was safer than the rest. If anything, this case is closer to the deliberate encounter cases where the plaintiff has an alternative, but it's far less favorable, like Rawls and Morrissey. In those cases, the plaintiff had two routes that they could take, the one past the hazard or one that's circuitous and farther, and the appellate court held those longer, circuitous routes aren't a better alternative, so it was foreseeable to the defendants that the shorter path that would take them through the hazard was reasonable for them to foresee that she would take. But here there really is no alternative. Did you ever read the Barber case? I know you didn't discuss it in your brief. Could you remind me the facts? The name is removed. It's a case out of the 4th District. I don't know of it being cited by any of the parties in this case. Oh, Barber, gas station recessed metal plates. This is a recent case. So in that case, they plow over a recessed plate and that leaves a natural accumulation of snow and ice in the plate, and it's clear under Illinois law that if you leave something in a recessed spot, like say, for example, if the plows go over a depression, then that's a natural accumulation, and the court further held that the mere sprinkling of salt that would cause that natural accumulation to melt and refreeze into ice is still a natural accumulation. How I would distinguish this case from Barber is to say that's a slip and fall on a natural accumulation. My suggestion is that it's a natural logical consequence that you can draw that this snow had to be added to by the defendant's actions because if there's an accumulation in this lot, they say it was because they skirted something, and if they skirted, then they banked. So theirs is an unnatural accumulation case, whereas Barber is a natural accumulation case. Thank you. Thank you, counsel. Ms. Newman, you may proceed. May it please the court, counsel. My name is Amanda Newman. I'm going to be representing Sisson Lawn and Landscaping and Sisson Inc. This morning, appellant's counsel discussed the unnatural accumulation argument and deliberate encounter argument. I'm not going to be making any comment with regard to deliberate encounter since it doesn't apply to Sisson, as Sisson is not a landowner. In this appeal, generally, there were two claims brought against my client, which were, first of all, that there was negligent performance under the contract that Sisson had with CGH, and second, that this was an unnatural accumulation. There was a genuine issue of material fact, and summary judgment shouldn't have been entered in the favor of Sisson. Since this morning, we've only been talking about unnatural accumulation. This afternoon. Sorry, this afternoon. Second time. First, I was going to say. You can let it go. This day has been. Okay. This afternoon, we've been talking about unnatural accumulation, so I'm going to start with that, if that pleases the court. With regard to the arguments that have been made so far, it sounds like what I'm hearing is that the DeGroote's contention is that since the method of plowing was to proceed plowing behind the cars, that somehow some amount of banked snow from behind the cars, which is not actually where the accident occurred, got between the cars next to the driver's side door of this car, and that was an unnatural elation upon which Lloyd DeGroote fell. There's no evidence of this in the record. The only evidence is that there was some amount of skirted snow behind the vehicle, and to the fact that it would be in existence at the actual site of the accident, next to the driver's side door. There's no evidence in the record to that one way or another. It was plaintiff's burden or opponent's burden at the trial court level to come forward with something that would create a genuine issue of material fact that Sisson created a natural accumulation there. They came forward with nothing other than the idea that banked snow behind the car may somehow have gotten next to that driver's side door and created a hazardous condition. That's not enough. It's speculation, and there's nothing in the record to support it. Well, is there anything to this view, and I think maybe it's been expressed but maybe not, that snow removal means removal of snow from the lot and that the snow had not been removed between the cars and that was either a breach of contract or negligence, whatever? Well, I'll talk about that from either aspect, either claim there. As far as negligent performance of the contract would go, the contract itself stated that there was supposed to be snow removal at CGH's request and salt applied at CGH's request. For negligent performance, for a breach of a duty of negligent performance, for somebody who's not in privity, which would be the degree, it's totally encompassed by the terms of that contract. There's nowhere in that contract that has any terms going to whether or not there was going to be removal of snow or accumulation between those cars. And there's testimony from CGH's manager that there was no expectation, no understanding that there would be shoveling or salt applied between those cars. They were aware that that never occurred. They were totally satisfied, and they're not making a claim in the suit, that there was anything more that CISH should have done with regard to cleaning between those cars. If you look at the common law aspect of negligence, whether or not they should have had some duty to do that, again, their only duty is to not aggravate an existing condition and not to create an unnatural condition. Obviously, they're not creating an unnatural condition by not performing a service there. Whether they're aggravating one, again, there's no duty to go between those cars and create that. Is it reasonably practical? I think you've discussed that this morning. How is it reasonably practical for them to do that? There's been no evidence at the trial court level that there was a practical way for them to achieve this removal of snow between the two cars. Is there a drain in this lot? I think the opposing counsel said snow removal professionals put salt on and then see it all become dry asphalt. There was testimony that there are drains. As far as removing snow down to the asphalt, the testimony was that they do that generally in the lot, but not with respect to underneath the cars because, again, while sometimes they're able to shoot salt underneath the cars, they're only able to do that when they're not damaging it. Well, this obviously accident didn't occur underneath the car. It occurred between cars. And is it conceivable that when you bank snow both front and back, I'm just imagining it, that you don't get draining? Well, with regard to under the contract, there was no request for them to ever put any salt between the cars, so they didn't have a duty there. Whether it's reasonably practical for them to put salt in between each car, there's been no evidence put forward that it's reasonably practical for that to occur. So I would go forward again with regard to this unnatural accumulation argument that there was no evidence of how much snow was between those two cars, how much snow was banked behind the cars, whether there was snow banked behind this car. There was no evidence of that one way or another. They're surmising based on the standard practice that there was some amount of snow banked behind this particular car, that it was pushed next to the driver's side door of this car, and then that's what she found. At this point, the trial court looked at this exact same argument and said, you know, whether the methodology of how they're plowing, what you've put forward at this point is insufficient to create a genuine issue of material fact and simply insufficient to prevent summary judgment because you're creating a causal link there that simply no evidence to support. So to the effect that that makes a logical leap that, you know, these events actually did occur and that that area she found was an unnatural accumulation, I think the trial court rightly found that there simply wasn't evidence in the record to support it. To go on, I think we've talked a little bit about, or appellants talked about the Sims case compared to the Sim case. I would differentiate that, and I believe we covered it in our brief. But just to reiterate, the Sims case was a case that had to do with a plaintiff that was a landlord. So it's a premises owner, which is a different standard than a snow removal contractor. So in that way, it's different, first of all. And the second way, in that case, they showed that there was banked snow. The banked snow that the plaintiff fell on was the actual accumulation. I mean, they plowed the snow. It was banked. He stepped on that banked area, and he fell. And this one, again, the banked area, which would presumably be behind the car, is not where she fell. The lots in that Sims case, there was evidence they were sloped. There was testimony that water had drained from higher ground to the lower part and refroze. There was evidence that there could have, a finer effect could have found, that it was an unnatural accumulation that he fell on. Well, just the idea of banked snow is unnatural, isn't it? True. But the evidence in that case was that the exact area that he fell on was the banked snow itself. It was the unnatural accumulation. Which is similar to the Orman case, which, again, was cited to by the opponents. The accumulation that that plaintiff fell on was itself the unnatural accumulation. It was the banked snow itself. Counselors, two minutes. Just to briefly talk about the contractual duties, the negligent performance of contractual duties. It wasn't touched upon by opponents during this argument, but it was touched upon during the briefing. Again, CGH, who hired Sisson, they are not claiming that Sisson did anything wrong. They don't recall that they ever asked for any follow-up services. To the recollection, Sisson performed everything that it was asked to do during December 1st to 3rd of 2008, just prior to this accident. Under the terms of the contract itself, Sisson was only obligated to remove the snow at CGH's request and to place all at CGH's request. We can't, or opponents can't, at this point, try to expand the scope of those terms for a negligent performance claim. The terms are the terms. The only thing they were asked to do is remove snow at the request and apply salt. The evidence in this case is that they did. That evidence is through the testimony of Mr. Lehman, the manager, and through invoices that were provided that show that they were there removing snow and that they applied about 16 tons of salt. To the effect that there's any argument that there was a negligent performance, there's simply no evidence at all in the underlying record to support that kind of claim. I would just, unless there's further questions, I would again just wrap up that there's no nexus between this unnatural accumulation, this bank snow that she's claiming, and the exact area of the fall. Nobody came forward and testified as to the amount of snow that was purportedly behind the car at the time of the accident or next to the door. And that, you know, under the terms of the agreement, everything was performed as it should have been performed. So I believe that our position would be the trial court correctly found that there simply were not genuine issues of material fact by which a fact finder could find in the appellant's favor, and that's why summary judgment was proper on both of the claims that were raised against this at the trial court level. Okay. Thank you, counsel. Thank you. Is it Mr. Raefel? Raefel. Raefel. Mr. Raefel, you may proceed. Thank you. One point I would like to stress on behalf of the hospital is to point out exactly the nature of this parking lot we're talking about here. This is a parking lot servicing the hospital's emergency room. By its very nature, that emergency room is open 24 hours a day, seven days a week, 52 weeks a year. There is never, ever going to be a time where a snow falls at a time when that lot doesn't have cars in it. People come in for treatment through that emergency room, and they may very well wind up being admitted to the hospital. Their cars could be sitting there for days. Because there's always cars there, there is no possibility of us removing all the snow from that lot. And the law doesn't require us to do that. It doesn't even require us to make a reasonable effort, but to the extent we do, the extent we undertake the effort to remove snow, all it requires is a reasonable effort on our part to remove that snow in a non-negligent manner. That's exactly what we were doing. We were plowing the lot to the extent it could be plowed. This case is a perfect example of that. The snow in this case all came down on the 1st of December. But the snow plow contractor was out three days in a row. They were out there on the 1st, they were out there on the 2nd, and they were out there on the 3rd. And the reason they were out there all three days is to get, as cars would move, they could get extra parts of the lot cleared. But they can't clear it all. They can never clear it all. Under the plaintiff's proposed definition of an unnatural accumulation, that whole lot would be considered an unnatural accumulation. The plaintiff's argument that because the snow plow itself moves snow as it's going up and down the rows, and because it comes close to cars, it therefore creates banks. And if it creates banks, those banks mix unnatural accumulations, which mix with natural ones, and therefore the whole thing should be considered unnatural. At least that's what I got. And that's just not the case. Now, is CISN only contracted to remove snow from the parking lot? Or do they remove snow... No, we have more than one property, and the contract covered more than one property. So, well, okay, but where I'm going, they're not removing snow from sidewalks? No, no, they're not. Okay, they're removing snow from parking lots on the exit. The contract said they are to plow upon our request, and they are to put down salt upon our request. In our case, there isn't any evidence at all of an unnatural accumulation. There's no evidence that Lori DeGroote, the plaintiff who was injured here, slipped on a bank that had been created by a snow plow. In fact, it's pretty clear from her testimony that that didn't happen. She testified that she fell on a patch of ice, and the patch of ice was immediately next to her car door.  She testified that the ice was about three to four inches thick, and that it had ruts and peaks in it. And it was her belief that the ruts and peaks had been caused by cars pulling in and out of the space next to her. The Harkins case, which we cite in our brief, says that ruts and peaks caused by traffic do not turn a natural accumulation into an unnatural one. The Barber case, which the court referenced, says that the spreading of salt, even though it might melt and then refreeze later, spreading of salt does not turn a natural accumulation into an unnatural one. There's just nothing here that shows an unnatural accumulation. There couldn't have been a ridge on the side of the car where she fell because there was another car there, or truck parked right next to her. The snow plow couldn't have created a ridge there. And if there had been a ridge created behind her car, that was nowhere near where she fell. She didn't fall at the rear of her car, she fell up towards the door. I have a question about the Fourth District case. They've decided that throwing salt on a naturally accumulated snow doesn't change the nature of a natural accumulation. Right, the Barber case. Right, the Fourth District Barber case. Right. Yet, if the naturally accumulated snow is there and they stick a shovel in it and move it somehow, are they saying that that... I'm just curious, what's the difference? Well, I'm not sure if you take a shovel and move a shovel of snow somewhere else, you've created an unnatural accumulation. I'd remove the natural one. Okay. In the minute I've got left, I'd just take a minute to talk about the Sims case that the plaintiff referenced in their brief. Sims was a 1968 case out of the Second District. And a case we cited in our brief, a 1992 case called Crane, was also out of the Second District. And the Crane case discussed Sims and distinguished it from the facts we have here. As the court pointed out, Sims was a case where the plaintiff actually fell on the unnatural accumulation, fell on the mound of snow that had been created. The Crane case didn't have that fact pattern. Although the plaintiff in Crane tried to use Sims to get off the hook, if you will, of showing a nexus between the ice she felled up. In that case, there was an unnatural accumulation, a mound of snow behind her car. The court said you can't use Sims for that. And you can't use McCarthy, which is another case the plaintiff cited, for the same reason. Those cases are cases where the plaintiff fell right on top of the unnatural accumulation. Therefore, in those cases, you don't have to show a nexus. But in our case, you do. And the plaintiff did not show a nexus here. Well, here, did the plaintiff say that snow caused her to fall or ice caused her to fall? Excuse me? Did she say it was snow or ice? Did she identify what specifically caused her to fall? She said she fell on a patch of ice that had a covering of snow on it. She couldn't testify to how much snow there was, but there was some kind of covering of snow on top of the ice. Counsel's time. Thank you. Thank you. Thank you, counsel. Ms. Urick, I'll get your name pronounced correctly. Am I correct on that? Yes, thank you. Okay, I mispronounced it first. I apologize. In rebuttal, I suggest that both defendants have said that the snow had to be banked from behind the car. There's no reason to assume that. I think they're assuming that there would be two adjacent parked cars left, and the only place you plow is across the backs of them. Why could this not be a single car that was plowed around, creating a ridge? The record at page 831 shows photographs of the ridge. It is a ridge that extends along the driver's side of the car, and it's a ridge that looks like it could well have been created by banking. Why are the defendants assuming that there's a difference between this case and Sims, where in Sims, the plaintiff fell on the actual ridge that was created by plowing, merely because it's advantageous to their argument? Well, let me try and help. Did your client say she fell on the ridge? The area that she fell upon was described as a ridge, I believe, by Mr. DeGroote. But the word ridge is definitely used in the record, a built-up ridge. Yes, absolutely. I think it's described as an area where snow or ice was built up four inches or so. It's described as a built-up ridge in the record, and there's no difference between Sims where this one car could have been skirted in this case. There's no reason to assume that only one of the faces of the car would have been skirted. Counsel for CGH raised the issue of Crane, trying to distinguish this case. In Crane, there you do have a situation where the unnatural accumulation was at the rear of the car, the car was backed in, and the plaintiff fell near her headlights. So the issue in Crane was there was no nexus between the unnatural accumulation at the tail of the car and the ice on which she slipped at the head of the car. That's not what we have here. Here, our unnatural accumulation that I'm pointing to is right along the driver's side door, and there's a photograph of it that's different from Crane. We don't need a nexus. And in Crane, the Sims case is expressly mentioned. When was the photograph taken? The photograph is marked on it December 8th, but the meteorological evidence in the record would show there wasn't much change in the weather. What day did she fall? She fell on the 4th. Mr. DeGroote returned to take pictures four days later, and he actually found, parked in the exact spot where he had moved Mrs. DeGroote's car from, someone owned the exact naked model of their car. It was randomly parked in the same spot. So it's kind of interesting. The photograph shows the same car, but in any case, it's the same spot. And there was no additional accumulation in the intervening days that would have created a new built-up ridge. Well, that's in terms of snowfall, but what was there in terms of temperature? Freezing, thawing? There is at least evidence in the record of conditions that would create the possibility of freezing and thawing. And if not the temperature, then there's at least the fact that defendants claim they applied salt, and that can cause melting at sub-freezing temperatures. And then you have cars parking, and the car's engines can melt. So at least there was conditions that can cause melting and refreezing. But if anything, that could have shrank over time the ridge over those four days, not cause it to increase in size or cause it to move into that spot. Well, I'm just thinking mechanically that cars, when things turn temperature liquid to slush, etc., and when you drive a car, the tires displace that off to the side. And as cars go on some frequency, they do create. I can imagine a number of scenarios where this situation would occur as a result of a natural accumulation. But the point is, I can also think of a reasonable scenario where it would be accounted for by an unnatural accumulation. And that's your argument against summary judgment? Yes. So how does a prior fact resolve that issue, whether it was natural or unnatural? They hear all the facts and they weigh them the same way they decide anything. Weigh the credibility of a witness, etc.? What facts would allow them to decide whether it was natural or unnatural accumulation? Here, the appellate court in Sims held that the relevant facts for them to consider would be that the testimony of the snow removal professionals was that they skirted cars when there were cars. That would create a ridge. That it's a normal inference for the finder-factor trial, that skirting would create a ridge, and that a ridge was seen. And then they have to decide, could that ridge have been caused by the melting of snow? If this lot had been plowed end-to-end and leaving a hard-packed layer of snow, that would be a natural accumulation. And then maybe the cars came in and melted that hard pack in one area, and what you see here is a remaining natural accumulation. But maybe it's not. That's an issue of fact for them to decide. That's how they decide it, by thinking about what happened and wondering to themselves. Counsel has one minute. To address the issue raised as to was this negligent performance, Ms. Newman suggested there's no evidence at all that Sisson performed their duties negligently. There is evidence that they did, and that's in the form of the testimony of people who saw the lot and thought that not enough snow had been removed. And that's in the testimony of people who saw the lot and thought, my view of it was salt wasn't applied. I think you'll see the same appearance whether salt wasn't applied or whether not enough salt was applied. But the fact is, they left a dangerous condition in this lot. But the most important things to remember are, she had no choice but to cross this area to reach her door. So the deliberate encounter exception does not apply. Under the four-factor duty test, when that's the case, you say that the injury is likely and foreseeable, and here the magnitude of the burden to them was just to do their daily inspection that they planned to do and call their snow removal people to apply more salt. And they say that that would have solved it. What about the cars that are driving down the streets and they're picking up snow and stuff on their car? You know how you do it in the winter? And then you pull in that parking lot and while you're sitting there, you shift your car and it falls and it drops off of your car. Snow that falls from a parking car is, to me, as natural an accumulation as snow that falls from the ground. But snow that's banked by the defendant there and left there, that's an unnatural accumulation. Or at least a reasonable one for us to be drawn to. Wouldn't it need some evidence that that ridge you're talking about, that somebody saw a plow go up on the side of that thing, and that it was a ridge created by a plow as opposed to one of the other myriads of ways that is supposed to let the jury speculate about how that ridge got there, assuming it was one? I think if you require more evidence than what is present in this case, then the Sims case is wrongly decided. What? Then the Sims case is wrongly decided because all the same evidence is here in this case. You might be on to something. Thank you. Thank you, counsel, all, for your very fine arguments this afternoon. It's been a pleasure. This case will be taken under advisement and a written disposition shall issue. The court will stand in recess until tomorrow at 9 a.m.